UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LISHAN WANG,                    :
  plaintiff,                   :
                               :
v.                              : Case No. 3:16cv1207 (AVC)
                               :
MIRIAM DELPHIN-RITTMON,          :
et al.,                         :
  defendants.                  :

## RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #148]

The plaintiff, Lishan Wang, an inmate who was formerly a patient at Whiting Forensic Institute (hereinafter "Whiting") and is currently housed within the custody of the Connecticut Department of Correction ("DOC"), brings this action, pro se and in forma pauperis, pursuant to 42 U.S.C. § 1983.[1]  He alleges that the defendants, Miriam Delphin-Rittmon, Helen Vartelas, Thomas Ward-McKinlay, Frank Valdez, Dr. Irene Frankel, Advanced Practice Registered Nurse ("APRN") Kathy Burness, Misty Delciampo and Wanda Williams, were deliberately indifferent to his serious medical needs and conditions of confinement in violation the Eighth Amendment's protection against cruel and

---

[1] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

unusual punishment.[2]

For the reasons that follow, the defendants' motion for summary judgment is granted.

**FACTS**

Examination of the pleadings, affidavits, 56(a)(1) statement,[3] depositions and exhibits accompanying the motion for summary judgment, and the responses thereto, discloses the following, undisputed material facts:[4]

---

[2] In a ruling on a motion to dismiss dated September 12, 2017, the court dismissed the official capacity claims against the defendants.  On January 25, 2017 and April 4, 2019, the court issued initial review orders regarding Wang's plausible claims.

[3] Wang has not filed a response to the defendants' statement of facts in compliance with local rule 56(a)2.  Local rule 56(a)1 provides that "[e]ach material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact."  The defendants informed the plaintiff of this requirement in their notice to the pro se litigant.  Thus, the defendants' facts may be deemed admitted where supported by the evidence.  See Small v. Clements, 3:18-cv-1731 (KAD), 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019).

[4] In his memorandum in opposition to the motion for summary judgment, Wang makes self-serving assertions.  He states that the defendants fabricated representations made in Wang's medical records.  According to Wang, Dr. Frankel and APRN Burness falsely stated in his medical records that they fully examined Wang in September 2016 when, in fact, they allegedly did not see or examine him at that time. However, Wang has not set forth any evidentiary support for such assertions that is sufficient raise an inference of a disputed issue of material fact.  See Vasquez v. Cty. of Rockland, No. 13 CIV. 5632 (SLC), 2020 WL 883514, at *9 (S.D.N.Y. Feb. 24, 2020)(holding inmate's unsupported contentions were insufficient to establish inference of fact to defeat summary judgment); Abreu v. Farley, No. 6:11-CV-06251 EAW, 2019 WL 1230778, at *9, *11 n.8 (W.D.N.Y. Mar. 15, 2019) (noting that vague or conclusory assertions supported only by self-serving statements are insufficient to defeat a properly supported summary judgment).

The plaintiff, Lishan Wang, was a patient in unit 2 of Whiting at all times relevant to this complaint.  As he was sentenced on September 22, 2017, Wang was also a pretrial detainee at all times relevant to the allegations of the complaint.[5]

Miriam Delphin-Rittmon served as the commissioner of Department of Mental Health and Addiction Services (hereinafter "DMHAS").  As commissioner, Delphin-Rittmon serves in a management position and is not directly involved in the day-to-day operations of the mental health facilities owned and managed by DMHAS.

Helen Vartelas served as the chief executive officer of Connecticut Valley Hospital (hereinafter "CVH"),[6] at all times relevant to the allegations of the complaint.  In this capacity, Vartelas served in a management position without direct involvement in the day-to-day operations of CVH or any of its divisions, including Whiting.

Thomas Ward-McKinlay served as the acting director of Whiting, at all times relevant to the allegations of the

---

[5] See Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=375805.

[6] CVH is a State of Connecticut-owned facility managed by the DMHAS.

complaint.  He served in a management position and was not directly involved in the day-to-day medical care decisions.

Frank Valdez was the director of unit 2 and was not involved in the day-to-day medical decisions concerning patients in Wang's unit.  Such medical decisions regarding patients in unit 2 were the responsibility of the medical staff assigned to that unit, including doctors, APRNs, and registered nurses.  Valdez did not work in unit 2 on the evening of September 5, 2016.  Prior to September 5, 2016, Wang had not communicated to Valdez any concerns about the patient who hit him on September 5, 2016.

On the evening of September 5, 2016, Tatayana Frankel was the on-call doctor for unit 2.  That evening, Wang was involved in an altercation with another patient (hereinafter the "other patient") in that unit.

The DMHAS police reports concerning the incident indicate the following facts:  On September 5, 2016, at approximately 10 p.m., the other patient turned the light on in Wang's room and Wang responded by coming out of his room and telling that patient he should not have turned on the light because it was after curfew hours.  The other patient appeared to become angry and approached Wang.  Forensic Treatment Specialists ("FTS") Daniel Ramos and Darrin Gould, who were at the unit 2 nursing

station, observed the activity between Wang and the other patient.  Ramos and Gould approached Wang and the other patient and attempted a verbal de-escalation and separation of the two individuals.  Gould witnessed the other patient hit Wang on his right cheek.[7]  FTS Gould then escorted the other patient to the unit 2 time-out room, while Wang was taken to the unit 2 medication room and evaluated.

DMHAS police responded to unit 2 of Whiting, following the report of the assault. DMHAS police officer Patricia Beaudin investigated and arrested the other patient who assaulted Wang.

At the time of the incident, Wanda Williams, a lead forensic treatment specialist in unit 2, was assigned to perform "constant observation" of a unit 2 patient and was seated at the doorway of room 214.  Constant observation requires the staff person to remain in a position so as to have a clear view and unimpeded access to the patient at all times, in order to ensure the safety of the patient or others in the unit.

In her seated position, Williams noticed that the other patient had turned on the light in Wang's room and Wang told him

---

[7] Due to the lack of clarity of the video from Unit 2 cameras, the police were later unable to determine whether the other patient slapped or punched Wang.

that he should not have done so after curfew.  She witnessed the incident involving Wang and the other patient and could see the two other staff members responding to the incident.

Thereafter, at 10:50 p.m., on September 5, 2016, the on-call physician, Dr. Tatayna Frankel, evaluated Wang.  Dr. Frankel noted that Wang complained of dizziness and headaches, but that his pupils were equal and reactive, that he had full range of motion in his neck and jaw, that his gait was steady, and that his head and teeth were all intact. At 10:55 p.m., on September 5, 2016, nursing staff saw Wang and offered him oral analgesics and a cold pack, but he refused.

On September 6, 2016, at 1:15 p.m., the defendant, APRN Kathy Burness, evaluated Wang and found no bruising or swelling on Wang's face and noted that the facial bones were symmetrical.  Based on her exam, she noted that no further intervention was required.

On September 15, 2016, Dr. Karen Brody met with Wang to review his treatment progress.  Valdez also attended this treatment plan review meeting.  During this meeting, Wang complained of dizziness, stiffness in his neck and some headaches and requested a neurology consultation.  Dr. Brody completed a neurology consultation form for Wang that day.

On September 29, 2016, Wang was examined by Dr. Darren Volpe, a neurologist.  Dr. Volpe completed a neurological exam of Wang and found that there were no cognitive deficits to suggest a post-concussive syndrome.  He also found that any pain might be due to the muscle strain and a transient injury to the jaw/TMJ, facial muscles or bones.   He concluded that Wang had no symptoms consistent with migraine and that his current symptoms were mild.  He recommended no further work up and concluded that there were no apparent cognitive effects resulting from the injury.  He recommended Tylenol as needed for any headaches.

DMHAS has issued a policy statement regarding the procedures to be followed by every DMHAS mental health facility when a consumer files a grievance alleging any questionable behavior by staff members.  For the period at issue, the grievance policy provided that patient complaints received in the Commissioner's office were to be forwarded to the client rights specialist.  Since 2012, William Pierce has served as the client rights and grievance specialist for DMHAS.

On September 21, 2016, Pierce received a six-page letter from Wang, dated September 16, 2016, which was also addressed to attorney general George Jepson, assistant attorney general Jaqueline Hoell, DMHAS commissioner Delphin-Rittmon, and CVH CEO

Vartelas.  Wang's letter included his request to obtain a copy of a security tape, his complaints that he was not receiving proper medical care and had requested a neurology consult but had not received one, and a statement that he desired to press charges against the other patient.

On September 21, 2016, Pierce spoke to Will Brady, the client rights specialist/human rights officer at CVH.  Brady informed Pierce that Brady had a copy of Wang's letter and that he was familiar with his complaints.

On September 23, 2016, Brady wrote a response to Wang addressing the issues raised in the letter.  This response letter stated that unit 2 staff persons were in the process of scheduling a neurology consult for Wang.

On January 16, 2017, Wang filed the fourth amended complaint in this case.  He asserts constitutional claims stemming from his conditions of confinement and medical care. Specifically, the fourth amended complaint cites the following conditions: the decision to move patient Harding, who had recently punched another patient, into Wang's dormitory; a staff member's conduct of tossing Wang's clothes onto the floor and lying about it; Wang's being moved to another room after patient Bhatt attempted to attack him; patient DuFour being housed in unit two and Dufour's conduct of throwing a piece of paper at

8

him; the decision to provide him with a used razor on September 3, 2015; the decision, sometime in 2010, to provide orange juice with dangerously high levels of potassium; the failure to provide paper towels in the patient bathroom since 2015; a staff member's act of permitting a splattering of blood from another patient to fall on Wang's bed sheets; the reckless placement of a patient named Sweet in Wang's room; the placement of a patient who passed gas every two or three minutes in Wang's room; Valdez's threat that Wang needed to be medicated when he did not want to give Valdez his old passes; the fact that Wang found eyeglass in the courtyard and bleach in an unattended bathroom; and the act of staffing Whiting with insane employees who favored certain patients over Wang.[8]  In his fourth amended and supplemental complaint, he also asserts claims based on Delciampo's and Williams's alleged failure to protect him from the other patient who assaulted him; Dr. Frankel's and APRN Burness's alleged deliberate indifference to his medical needs; and the supervisory liability against Delphin-Rittmon, Vartelas, Ward-McKinlay, and Valdez.[9]

---

[8] He also makes further allegations about the conduct of nondefendant staff members, Saryn and Sandra.

[9] The court notes that the defendants' motion for summary judgment addresses only the alleged deprivations concerning the used razor, orange juice, paper towels, Delciampo's and Williams's alleged failure to protect him, and Dr. Frankel's and APRN Burness's alleged deliberate indifference to his medical

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The court must view all inferences and ambiguities "in a light most favorable to the nonmoving party." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991).  The nonmoving party cannot, however, "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).

In deciding a motion for summary judgment, the court may not "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the

---

needs. The defendants have also addressed the asserted supervisory liability claims against Delphin-Rittmon, Vartelas, Ward-McKinlay, and Valdez.

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Proctor v. LeClaire, 846 F.3d 597, 607-08 (2d Cir. 2017) (internal quotation marks and citations omitted).  The moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'"  Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 323).

"A dispute regarding a material fact is genuine 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "'Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant, 923 F.2d at 982).

The court reads pro se papers liberally and interprets them "'to raise the strongest arguments they suggest.'"  Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  However, "unsupported allegations do not create a material issue of fact" and are insufficient to oppose a properly supported motion for summary judgment.  Weinstock v. Columbia Univ., 224 F.3d 33, 41

11

(2d Cir. 2000).  "[T]he plaintiff must present affirmative evidence in order to defeat . . . summary judgment."  <u>Anderson</u>, 477 U.S. at 257.

**DISCUSSION**

## I. <u>42 U.S.C. § 1983 Conditions of Confinement</u>

To state a section 1983 claim for deliberate indifference under either the Eighth or Fourteenth Amendment,[10] a plaintiff must satisfy an objective element by showing the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which include the risk of serious damage to physical and mental soundness." <u>Darnell</u>, 849 F.3d at 30 (quoting <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013)).  "[T]he conditions themselves must be evaluated in light of contemporary standards of decency."  <u>Id.</u> (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury."  <u>Id.</u> (citing <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect one identifiable human need.  See <u>Wilson</u>

---

[10] As a pretrial detainee, Wang's claims stemming from his conditions of confinement and medical care are analyzed under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment, which applies to sentenced prisoners.  See <u>Darnell v. Pineiro</u>, 849 F.3d 17, 29-34, n.9 (2d Cir. 2017).

v. Seiter, 501 U.S. 294, 304 (1991); see also Darnell, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").  Under the second element for a Fourteenth Amendment claim, "the mens rea prong, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety."  Id.

A plaintiff must allege the personal involvement of each defendant against whom he asserts a claim for damages under § 1983, and may only recover damages against a supervisory official by showing that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct.  See Wright

v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotations omitted); Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[11]

    (a)   Razor, Orange Juice, Paper Towels, Tossed Clothing, Blood, Patient with Gas, Valdez's Threat, Eyeglasses and Bleach, and Staffing

Wang's complaint has not alleged that any of the named defendants were involved with any Fourteenth Amendment violations concerning the unclean razor blade, orange juice, blood splatter, tossed clothing,[12] the lack of paper towels, or having to room with another patient who had gas.  Moreover, Wang has not alleged facts or adduced evidentiary support to raise an inference that these alleged conditions satisfy the objective element of the Fourteenth Amendment deliberate indifference analysis.

Likewise, Wang cannot base his claim for a Fourteenth Amendment violation on Valdez's alleged verbal threat that Wang needed to be medicated.  Allegations of verbal harassment or

---

[11] The second circuit has observed that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]"  Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013).  However, without further second circuit guidance on this issue, the court assumes for purposes of this ruling that the categories outlined in Colon remain valid.

[12] He does, however, appear to indicate that Williams and Valdez suggested that his roommate tossed his clothing on the floor.

threats by prison staff are generally insufficient to support a constitutional violation.  See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); Tafari v. McCarthy, 714 F. Supp. 2d 317, 365 (N.D.N.Y. 2010) (noting absent physical injury, verbal threats by state officials are insufficient to support a constitutional violation).

Wang's allegations concerning the eyeglasses and bleach that he found the courtyard and bathroom, respectively, fail to state a plausible Fourteenth Amendment claims based on any of the defendants' intentional conduct or reckless failure to mitigate a known risk.  There is no indication that any defendant participated in these conditions.  At most, these allegations assert conditions resulting from negligent conduct, which is insufficient to support a claim of deliberate indifference.  See Darnell v. Pineiro, 849 F.3d 17, 36 (2d Cir. 2017).

Finally, Wang's claim concerning the risk posed by staffing Whiting with "insane employees" who favored certain patients over Wang cannot suffice to establish a Fourteenth Amendment deliberate indifference claim.  Such a claim is wholly conclusory and based on Wang's self-serving assertions.  See Smalls v. Wright, No. 3:16-CV-2089 (JCH), 2017 WL 3474070, at *3

(D. Conn. Aug. 11, 2017) (conclusory allegation cannot establish deliberate indifference).

Accordingly, the defendants' motion for summary judgment on the conditions of confinement claims concerning the razor blade, orange juice, and paper towels is granted.  In addition, any claims based on alleged deprivations concerning a staff member tossing Wang's clothing on the floor, a splattering of blood from another patient on his bed sheets, placement of a patient with gas in his room, Valdez's threat that about Wang's need to be medicated, the eyeglasses in the courtyard and bleach in the bathroom, and the asserted staffing of insane employees who favored certain patients over Wang, are dismissed as not plausible.[13]

(b)  Failure to Protect

Wang alleges that Delciampo and Williams failed to protect him from the assault and injury inflicted by the other patient. He also alleges that he was exposed to other patients with violent tendencies in his dormitory.

In general, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and

---

[13] The defendants have not moved for summary judgment on these allegations. However, under 28 U.S.C. § 1915(e)(2)(B)(i)-(ii), the court may dismiss (at any time) claims that are frivolous or that are not plausible.

internal alteration omitted).  A pretrial detainee may assert a Fourteenth Amendment claim based on a failure to protect the inmate from a risk from other inmates, but the pretrial detainee must satisfy the objective and <u>mens rea</u> elements of the Fourteenth Amendment analysis.  <u>Vickers-Pearson v. City of New York</u>, No. 18 CIV. 8610 (KPF), 2020 WL 5732028, at *5 (S.D.N.Y. Sept. 24, 2020).  As previously noted, "the inmate must show that the conditions [of incarceration] ... pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness."  <u>Darnell v. Pineiro</u>, 849 F.3d 17, 30 (internal quotation marks and citations omitted) (2d Cir. 2017).  The inmate must demonstrate that the unreasonable risk was "actual or imminent."  <u>Benjamin v. Fraser</u>, 343 F.3d 35, 51 (2d Cir. 2003), <u>overruled on other grounds by</u> <u>Caiozzo v. Koreman</u>, 581 F.3d 63 (2d Cir. 2009).  A substantial risk of serious harm "depends not on the officials' perception of the risk of harm, but solely on whether the facts, or at least those genuinely in dispute on a motion for summary judgment, show that the risk of serious harm was substantial."  <u>Lewis v. Siwicki</u>, 944 F.3d 427, 431-32 (2d Cir. 2019).  General threats of physical assault are not enough to constitute a serious risk of substantial harm.  <u>Thomas v. Keane</u>, No. 99 CIV. 4302 DC, 2001 WL 410095, at *4 (S.D.N.Y. Apr. 23, 2001) (general

threat and rumors that "violence will continue" after assaults occurred against other inmates was insufficient).

For the second element, a pretrial detainee must show that the defendants knew, or should have known, of the risk and acted intentionally or recklessly by failing to act with reasonable care to mitigate that risk of harm.  See Wine v. Chapdelaine, No. 3:18-CV-704 (VAB), 2020 WL 4059845, at *7 (D. Conn. July 19, 2020); see also Corley v. City of New York, No. 1:14-cv-3202-GHW, 2017 WL 4357662, at *12 (S.D.N.Y. Sept. 28, 2017) (citing Darnell, 849 F.3d at 35)).

(i) Delciampo

Wang has not alleged that Delciampo was present at the time of the assault by the other patient.  He has asserted that she catered to the needs of the other patient and had observed the other patient "bullying" Wang in the shower, at some time prior to the assault.  Wang refers to an incident during which the other patient wanted Wang to get out of the shower area where he was preparing for a shower so that the other patient could take a shower prior to Wang.  Wang has asserted that staff members, whom he identifies as Misty and Jane, failed to stop the other patient so that Wang had to wait until the other patient finished his shower.  This incident fails to support an inference that Delciampo knew or should have about the risk of

substantial harm posed to Wang by the other inmate or that she acted intentionally or recklessly by failing to mitigate that risk.  As no reasonable jury could conclude, based on the factual record, that Delciampo acted with deliberate indifference to Wang's safety by intentionally or recklessly failing to mitigate a known risk of harm to Wang, the motion for summary judgment is granted on this claim.

       (ii) <u>Williams</u>

Wang states that on September 5, 2016, Williams failed to prevent the assault by the other patient, despite the fact that she was sitting and witnessing the incident.

Williams states that she was sitting at the doorway of room 214, where she assigned to constant observation of a patient who was medically or psychologically at risk.  She notes that Whiting policy required her to maintain constant observation of her patient and that she had observed two other staff members responding to the situation between the other patient and Wang.

Based on the facts and evidence of record, Williams did not act with deliberate indifference by intentionally or recklessly failing to mitigate a known risk of substantial harm to Wang.  She was performing her assigned duties at the time and based on the facts of record, she witnessed others attending to the situation.  Moreover, the other patient's physical assault on

Wang appears to have been a quick, unanticipated act.  See
Fernandez v. N.Y.C. Dep't of Corr., No. 08 Civ. 4294 (KMW), 2010
WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) ("Absent clear notice
of a risk of harm to the prisoner, courts routinely deny
deliberate indifference claims based upon surprise attacks.").
Therefore, the motion for summary judgment on this claim is
granted.

> (c)  Patients Harding, Bhatt, Sweet and DuFour

Wang asserts allegations regarding four additional patients
at Whiting.  He states that he complained to Valdez about the
fact that patient Harding, who had previously punched someone,
was housed in Wang's dorm. Wang states that patient Bhatt had
attempted to attack him, but Valdez catered to Bhatt by moving
Wang out of the dorm. He also alleges that patient Sweet was
placed in his room and that patient DuFour was placed in unit
two and threw a piece of paper at Wang while watching
television.

With respect to his claims about patients Harding and
DuFour, Wang's allegations only raise a generalized concern
about their risk to his safety in the future.[14]  As he has not
established that these patients presented an actual and imminent

---

[14] The court notes that Wang has not alleged the involvement of any defendant
in DuFour or Sweet's placements in unit 2.

threat of harm, he has not satisfied the objective element of the Fourteenth Amendment analysis.

Patient Bhatt may have posed an actual or imminent threat of harm, but Wang alleges that Valdez moved Wang "out of the dorm." Thus, Wang's own allegations establish that Valdez did not act with deliberate indifference. Instead, Valdez responded to the risk of harm by removing Wang from the dorm in which Bhatt was housed. As to patient Sweet, Wang has not alleged any facts about him or how he presented a substantial threat of harm. Accordingly, the court concludes that these claims are not plausible constitutional violations pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii). Therefore, judgment shall enter in favor of the defendants on these allegations.

(d)   Medical Deliberate Indifference

Wang alleges that Dr. Frankel[15] and APRN Burness acted with deliberate indifference to his medical needs.

Relevant to the first factor of the Fourteenth Amendment analysis, the "serious medical need standard contemplates a

_____

[15] The court notes that Dr. Frankel died on March 22, 2018. The defendants provided notice of Dr. Frankel's death to Wang on August 1, 2018. Wang has not filed a motion to substitute a party. Accordingly, this action may be dismissed as to Dr. Frankel under Federal Rule of Civil Procedure 25, which provides that if a motion to substitute a party is not filed within 90 days after service of a statement noting the death, the action against the decedent must be dismissed. The court also concludes, however, that entry of summary judgment on Wang's claim against Dr. Frankel is appropriate based on its review of the factual record.

condition of urgency such as one that may produce death, degeneration, or extreme pain." Charles v. Orange Cnty, 925 F.3d 73, 86 (2d Cir. 2019).  To determine whether a medical need is sufficiently serious to be cognizable as a basis for a constitutional claim for deprivation of medical care, the court should "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects the individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." Charles, 925 F.3d at 86.  "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." Id. at 86.

Relevant to the second or "mens rea" factor, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

For purposes of ruling on this motion for summary judgment, the court assumes that Wang had a serious medical need. However, the evidence of record demonstrates that Dr. Frankel and APRN Burness provided him with adequate medical care after the assault by the other patient.

To the extent Wang believed he required different treatment such as having a more immediate neurology exam after his injury, an inmate's disagreement over the proper treatment does not give rise to a constitutional claim so long as the treatment given is adequate.  See Simpson v. Oakes, 640 F. App'x 86, 88 (2d Cir. 2016); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); Mena v. City of New York, No. 13CV2792NGGSJB, 2018 WL 4328827, at *5 (E.D.N.Y. Sept. 11, 2018) (granting summary judgment on pretrial detainee's claim of medical deliberate indifference where he had shown no more than he disagreed with course of treatment he received).  No evidence in the record raises an inference that the treatment provided by these defendants was inadequate.  Even if a claim could be made that defendants acted negligently with regard to Wang's treatment, negligence is not sufficient to establish a

deliberate indifference claim under the Fourteenth Amendment.
See Darnell, 849 F.3d at 36 ("A detainee must prove that an
official acted intentionally or recklessly, and not merely
negligently."). As the facts and evidence of record raise no
inferences of fact that either Dr. Frankel or APRN Burness acted
with deliberate indifference, the motion for summary judgment is
granted.

(e)   Supervisory Defendants

The motion for summary judgment on the claims against the
supervisory defendants, Delphin-Rittmon, Vartelas, Ward-McKinlay
and Valdez is also granted. The court has determined that Wang
has not established any underlying constitutional violations to
support his supervisory liability claims. See Raspardo v.
Carlone, 770 F.3d 97, 129 (2d Cir. 2014) ("Because we have held
that there was no underlying violation, there is also
no supervisory liability").

24

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment [Doc. #148] is GRANTED.  The clerk is hereby directed to render judgment in favor of the defendants on all claims and close this case.[16]

It is so ordered this 3rd day of November 2020, at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello
United States District Judge

---

[16] The claims based on Wang's clothing being tossed on the floor, blood splatter from another patient on his bed sheets, placement of a patient with gas in his room, the eyeglasses in the courtyard and bleach in the bathroom, the staffing of insane employees who favored certain patients over Wang, Valdez's threat that about Wang's need to be medicated, the placements of patients Harding, Sweet, and DuFour and Wang's being moved out of the dorm after patient Bhatt had attempted to attack him, are DISMISSED as not plausible under 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).